UNITED STATES *v.* MORRIS EUROPEAN & AMERICAN EXPRESS CO. (No. 776).[1]

1. TREASURY REGULATIONS AS TO FREE ENTRY OF ANTIQUES.
    Conformity to the Treasury Regulations governing the free entry of artistic antiques is a condition precedent to the right accruing under the statute. Conformity is here shown.—United States *v.* Dominici (78 Fed. Rep., 334).

2. AFFIDAVITS OBJECTED TO HERE FOR THE FIRST TIME.
    The formal sufficiency of the affidavits of the importer going to show the importation entitled to free entry is here for the first time assailed. The objection comes too late.—United States *v.* Goodsell Co. (91 Fed. Rep., 519).

3. IMPORTATION NOT AN ARTISTIC ANTIQUE.
    It appears the sole artistic feature of the furniture of the importation was the carving on it, and this had been recently applied. This fact is uncontroverted. It compels a reversal.

## United States Court of Customs Appeals, April 1, 1912.

APPEAL from Board of United States General Appraisers, Abstract 26570 (T. D. 31866).
    [Reversed.]

*William L. Wemple*, Assistant Attorney General (*William A. Robertson* on the brief), for the United States.
    Submitted on record for appellee.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

DE VRIES, Judge, delivered the opinion of the court:

The importation in this case was a table claimed to be an artistic antique over 100 years old. It was held by the collector to be dutiable under the provisions of paragraph 215 of the tariff act of 1909, and is claimed to be exempt from duty under paragraph 717 of the free list of the same act. The board sustained the importer. The Government appeals.

The case turns upon the construction to be given the latter paragraph and the relevant provisions thereof.

In so far as pertinent, that provision of the free list declares "exempt from duty" "artistic antiques, * * *, but the free importation of such objects shall be subject to such regulations as to proof of antiquity as the Secretary of the Treasury may prescribe."

The specific statutory authority vesting in the Secretary of the Treasury power to make such regulations as "to proof" of such antiquity confines the application of the regulations to the "free importation" of such objects. It likewise relates the proof to facts occurring "prior to the date of their importation."

The regulations, promulgated as T. D. 29958, require the importer to produce upon entry this proof, and in pertinent part are as follows:

Importers making entry of articles under said provision of law will be required *to produce upon entry*, in addition to the consular invoice required by law, the following evidence to show that such articles were produced more than 100 years prior to the date of their importation:

1. An affidavit of the ultimate consignee stating that he has investigated the origin and history thereof, and believes the same to have been produced more than 100 years prior to the date of their importation, which shall be substantially in the following form:

\* \* \* (Form of affidavit.)

2. A declaration of the foreign seller or shipper, certified by the United States consul at the place of shipment, stating the name of the producer of such articles and the date and place of their production, and also stating the name and residence of the person from whom and the date when such seller or shipper acquired the same; provided, however, that if such seller or shipper is not in possession of all such facts, he may state in lieu thereof such other facts as may be in his possession tending to show that such articles were produced more than 100 years prior thereto, which declaration shall be substantially in the following form:

\* \* \* (Form of declaration.)

A careful examination of such articles should be made by the appraising officer to ascertain whether the same are works of art or articles of the character provided for in said provision of law, and also whether the same were in fact produced more than 100 years prior to their importation, and his findings in such regard should be clearly stated in his return upon the invoice, which return and the collector's report thereon, together with all papers and affidavits pertaining to the entry, will be forwarded by the collector to the department for final determination.

The prescribed affidavit of the ultimate consignee is fixed by the regulations and permits of no alternative. In this case it was made in the form prescribed.

The declaration of the foreign seller or shipper permits of a liberal alternative, requiring the certification of only such facts as may be in the possession of the foreign seller or shipper *in lieu* of the enumerated prescribed facts, or any of them.

That portion of the regulations relating to an examination of the articles by the appraising officer and report to the Secretary of the Treasury and his approval thereof are clearly administrative and not evidentiary, and do not prescribe or purport to prescribe proofs as required by the law.

At the threshold of the inquiry we are confronted with the question whether these regulations thus promulgated are conditions precedent to the right of free entry as accorded by this section of the law, or whether they are merely regulative of the method of introducing such importation into the body commerce of the country. Upon that point we think the authorities are uniform and well settled.

The principle controlling such cases may be generally stated that where regulations are promulgated by the Secretary of the Treasury under the general power granted by the provisions of section 251 of the Revised Statutes to make general rules and regulations for the collection of the revenues, such are deemed and held regulative or administrative merely and not conditions precedent to the right of exemption from duty. Compliance with such regulations may be had after the acts of importation and entry. Compliance with such may be the subject of proof before the Board of General Appraisers. Where, however, an exemption from or reduced rate of duty is claimed under a specific provision of the statutes which, as in this case, is accorded under or subject to such regulations as to proof or otherwise that may be prescribed by the Secretary of the Treasury, it has uniformly been held that such regulations become a condition precedent to the right accorded by the statute and must be complied with at the time of entry, or as otherwise specifically directed by the statute granting the same. In such cases the right to an exemption from or to a reduced rate of duty is an exemption accorded in the specific instance only, and constitutes an exception from the general rule, which must, in order to be enjoyed, be subject to compliance with the condition precedent prescribed by the Secretary.

The rule is aptly and specifically laid down in United States v. Dominici, a decision by the United States Circuit Court of Appeals, Second Circuit (78 Fed. Rep., 334, 338). The court there states:

It is not disputed that upon the record before this court it appears that the proof of identity required by the Treasury regulations was not furnished, but the importers insist that the furnishing of such proof is not a prerequisite of free entry if they can show to the court in some other way that their shooks are in fact of American manufacture. We are unable to assent to any such proposition. Congress expressly laid a duty upon boxes or barrels containing oranges or lemons. In withdrawing any particular kind of boxes from the obligation to pay that duty it could couple the privilege of free entry with any restriction it chose. By the paragraph (493) of the act above quoted it has coupled that privilege with the requirement that proof of identity shall be made under general regulations to be prescribed by the Secretary of the Treasury. The case is very different from those cited on the appellee's brief, where the regulations under consideration had been made under the general power of the Secretary, as head of the Treasury Department, to regulate the administrative details of customhouse business. There has been no attempt to defeat the provisions of the statute by an arbitrary refusal to prescribe any regulations at all, nor by the prescribing regulations which it is impossible to comply with. The rights secured to the importer by the statute are in no wise modified or interfered with or injuriously affected by the regulations, which are nowhere suggested to be contradictory of the statute, or unjust, unfair, or even unreasonable. "When a mode of proof is prescribed by the terms of the law, or by its fair interpretation, no other than the statutory evidence can be admitted." Dutilh v. Maxwell (2 Blatch., 541, Fed. Cas. No. 4, 207). Here Congress has expressly provided for one mode of proof, and for one only, in the very same sentence in which it provides for free entry, and it is difficult to understand on what theory it could be held that this express provision as to proof is not of the essence of the exemption from duty which that sentence accords to the importer who may bring his importations within its terms. See also Gauthier v. Bell (10 Fed. Cas., 103).

A most comprehensive and instructive decision upon the point was rendered by the Board of General Appraisers, Judge Somerville writing the opinion of the board, in G. A. 3880 (T. D. 18078), which opinion was affirmed by the United States Circuit Court, Second Circuit, in United States *v.* Goodsell Company (91 Fed. Rep., 519). That case reviews all of the authorities upon the subject, and we can do no better than to rest the point upon the convincing logic of that opinion and the authorities therein cited and quoted.

While it is the established rule of law that where the right of exemption from, or to a reduced rate of, duty is by the Congress made subject to regulations to be prescribed therefor by the Secretary of the Treasury, these regulations nevertheless must be reasonable. The principle is that they must be regulative and not prohibitive. The right to import free of duty must not be destroyed or rendered inoperative by the prescribed regulations.

In Morrill *v.* Jones (106 U. S., 466, 1882) the Supreme Court passed upon the validity of article 383 of the Customs Regulations then in force. Section 2505 of the Revised Statutes reads as follows: "Animals, alive, specially imported for breeding purposes from beyond the seas, shall be admitted free (of duty) upon proof thereof satisfactory to the Secretary of the Treasury, and *under such regulations as he may prescribe.*" The article of the regulations (383) above cited provided that before a collector admitted such animals he must, among other things, be satisfied that the animals are of *superior stock*, adapted to improving the breed in the United States. The Supreme Court held this regulation to be in excess of the Secretary's power, Chief Justice Waite observing:

The statute clearly includes animals of all classes. The regulation seeks to confine its operation to animals of "superior stock." This is manifestly an attempt to put into the body of the statute a limitation which Congress did not think it necessary to prescribe. Congress was willing to admit duty free all animals specially imported for breeding purposes; the Secretary thought the privilege should be confined to such animals as were adapted to the improvement of breeds already in the United States. In our opinion, the object of the Secretary could only be accomplished by an amendment of the law. That is not the office of a Treasury regulation.

Under these well-settled principles of law the regulations prescribed by the Secretary of the Treasury under the authority of Congress granted in paragraph 717, *supra*, are conditions precedent. In order to enjoy the benefit thereof, therefore, they must be complied with by the importer invoking that license under the terms of these regulations as therein provided at the time of the entry of the goods. Such was done in this case.

The regulations of the Secretary of the Treasury are intended to effect the right of entry alone when the entry paper is presented to the collector of customs. Without such he could reject the entry when tendered at his office. With compliance with such he must

accept the free-entry paper; but neither the statute nor the regulations clothe this prescribed proof with any statutory force which controls the decision of the collector in the first instance or the Board of General Appraisers thereafter upon protest. Free entry having been made of the goods by the importer, the collector proceeds upon the record before him, considering not alone these affidavits and certificates, but acting also upon the advisory information therein contained and such other proofs as may be in the case or are legally obtainable.

The importer having complied with the regulations he has thereby made such a prima facie case as to the antiquity of the goods and so satisfied all conditions precedent to the right of exemption from duty that the collector must accept this entry and proofs. But this does not conclude the collector in his decision as to the proper rate and amount of or exemption from duty. The collector and, upon protest to the Board of General Appraisers, the board consider these affidavits and certificates, in connection with the other facts and proofs in the case, clothed with no superinherently probative or conclusive force by reason of the statute or regulations and render decision accordingly. It might occur that in the presence of a claimed insufficiency of these affidavits under the regulations that the collector erred in accepting the free entry and should have rejected the same, or that the regulations themselves were not a compliance with the statute or reasonable, whereupon such questions might be raised as issues before the Board of General Appraisers and therefore were reviewable. Such questions, however, did not arise in this case, but we deem it advisable of suggestion as amplifying what is hereinbefore said.

Any other conclusion divests the collector in the first instance, and later the Board of General Appraisers of final jurisdiction, in the absence of appeal, to determine the rate and amount of duty accruing upon *all* imported merchandise.

The formal sufficiency of the affidavits here was not questioned by the collector. On the contrary, he accepted and acted upon them and the entry as sufficient, and in his letter to the Secretary of the Treasury, addressed pursuant to these regulations, reporting upon the particular case, he expressly stated that the regulations in this particular had been complied with. The Secretary of the Treasury assumed the same in his letter of reply. The decision of the collector, therefore was not upon the ground of insufficiency of these affidavits; on the contrary, he held them sufficient. There is nothing in the record that discloses that the point of the insufficiency of these affidavits was made before the Board of General Appraisers. While the decision of the board recites that the regulations have

been complied with, that recital is perfectly consistent with the view that the issue was not made before the board, but was a mere recital of that which appeared as established in the record.

Upon appeal to this court by the specifications of error the sufficiency of these affidavits is apparently for the first time assailed by the Government, appellant. We assume from the facts stated that this is the first time that the question has been raised. We think the point comes too late.

In a somewhat similar case the United States Circuit Court of Appeals, Second Circuit, in United States *v.* Goodsell Co., *supra*, adopting a similar principle of decision, stated:

The appellant contends that the record discloses no proof that the articles were of American growth, and none that they had been exported as shooks. The board of appraisers reports that such growth and exportation were "uncontroverted facts," and it is quite apparent that the point now contended for was not raised before the board. In view of that circumstance, and of the letter from the Treasury Department to the collector directing an appeal of this cause solely to secure a ruling as to the effect of the circular of July 15, 1895, it may be assumed that whatever defect there may have been in the proof presented to the board was waived by the Government, and is not now available to the appellant.

We are of the opinion, therefore, that any objection to formal sufficiency of the affidavits required by the regulations to be filed before the collector made in this court for the first time comes too late.

At the hearing before the Board of General Appraisers upon the merits testimony of the importer was introduced in support of appellee's claim. The board had before it this testimony, the affidavits introduced before the collector pursuant to the regulations, and the certificate of the appraiser. The board upon consideration of this record made a finding that the article was an artistic antiquity more than 100 years of age and therefore entitled to free entry.

Under the well-settled rule of this court, this finding of the board would be held conclusive upon this court were it not for the fact that it appears to us from the record that there is no substantial conflict in the testimony on a crucial fact in the case. The affidavits and declarations are at best but recitals of opinions of witnesses confessedly by the record not experts. The appraiser reported and the collector returned that the sole "artistic" feature, the carving of the desk, in question was recently applied. The importer himself corroborated rather than disputed that statement by testifying that "he understood it was put on when the Dicksons had it, and that he had purchased it from the solicitor who had bought it from the Dicksons." This fact seems uncontroverted in the record, and in our judgment compels a reversal of the decision of the board.

*Reversed.*